# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOAN CICCHIIELLO,<br>*Plaintiff,*<br><br>v.<br><br>WARDEN DANBURY FCI, et al.,<br>*Defendants.* | No. 3:24cv1240 (VAB) |

## INITIAL REVIEW ORDER

Joan Cicchiello ("Plaintiff"), is incarcerated at the Bureau of Prisons' ("BOP") Danbury Federal Correctional Institution ("FCI"), and has brought this civil rights action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"). Am. Compl., ECF No. 8. Ms. Cicchiello has sued Warden at Danbury FCI (official capacity only) and several other individuals (individual and official capacities) who work for BOP: Dr. Amundson, Camp Administrator S. Moore, Lieutenant Foisey, Mailroom Supervisor Mr. Rossionier and Mailroom Staff, Case Manager Mr. Ramos, and Camp Unit Secretary Mr. Clark. She seeks damages and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in this Complaint and conducted an initial review of the allegations therein under 28 U.S.C. §1915A.

1

For the reasons stated below, Plaintiff's Complaint is **DISMISSED**.

## I.    BACKGROUND[1]

Strip Search

On July 1, 2021, inmates allegedly were caught with contraband and sent to the Segregated Housing Unit ("SHU"). Am. Compl. at 3. The next day, all females at the Danbury FCI allegedly were sent to the old visiting room, while male officers went to the dorm and searched the facility dorm lockers, beds, mattress, bathrooms, and vents for contraband. *Id.*

The female officers allegedly ordered the female inmates to go into the bathrooms, strip off their clothing, turn to face the wall, squat, bend over, separate their buttocks, and cough. *Id.* at 4. After the inmates allegedly opened their mouths and showed their hand, they allegedly were allowed to dress. *Id.* The stalls allegedly were all open and the female inmates—who stood in various state of undress—allegedly were exposed to view. *Id.* The inmates allegedly were not provided with information about the contraband found on any of their bodies or in the dorms that day. *Id.* And none of the female inmates allegedly were taken to the SHU on that day. *Id.*

Ms. Cicchiello alleges that Lieutenant Foisey needed to have the strip search of the female inmates cleared by Ms. Moore and Dr. Amundson. *Id.*

Residential Reentry Center/Home Confinement and FSA Earned Time Credit

Ms. Cicchiello also claims that Mr. Ramos had her sign paperwork concerning her Residential Reentry Center confinement on June 17, 2024. *Id.* He allegedly kept the paperwork on his desk until he returned from vacation on July 9, 2024. *Id.* AW Puzio allegedly located the

---

[1] The Court does not include herein all of the allegations from the amended complaint but summarizes the facts to provide a context to this initial review. It does note that Ms. Cicchiello is no longer in BOP custody. Notice, ECF No. 19.

paperwork and sent it on its way. *Id.* Mr. Ramos has allegedly more recently advised Ms. Cicchiello that BOP officials have thirty days to answer from July 10, 2024. *Id.*

Ms. Cicchiello claims that she is entitled to have certain First Step Act ("FSA") earned time credits applied toward her Residential Reentry Center or home confinement under the FSA. *Id.* at 5. She allegedly received a typed statement from Mr. Ramos, stating that she would be placed in Residential Reentry Center. *Id.* Ms. Cicchiello allegedly has completed programming and work while at Danbury FCI camp. *Id.*

Court Fees

Ms. Cicchiello complains that Camp Secretary Clark delayed her payment of court fees, requiring her to file a motion to reopen or for reconsideration. *Id.* at 6.

Mail

As for Mailroom Supervisor Mr. Rossionier and the mailroom staff, Ms. Cicchiello complains that her mail is opened and shows no postmark or stamps so she cannot tell when her mail arrived at the facility. *Id.* at 6. She claims that her legal mail has been delayed by two weeks. *Id.*

Conditions of Confinement

Finally, Ms. Cicchiello alleges that she is housed in a dorm with a temperature more than 100 degrees and she must sleep fully clothed. *Id.* at 7. She claims there are not enough fans, and the available fans only blow hot air. *Id.*

## II.    DISCUSSION

Ms. Cicchiello raises claims under the First, Fifth, Fourth, and Eighth Amendments.[2] She asserts that she has been subjected to retaliation, denied access to the courts, sustained illegal mail interference, and cruel and unusual punishment.

The Court will address each of these claims in turn.

### 1.    *Bivens* Actions Generally

42 U.S.C. § 1983 creates a specific damages remedy for plaintiffs whose constitutional rights are violated by state officials. *See Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017). Congress has not created a similar statutory remedy for such claims against federal officials acting under the color of federal law. *See id.* To state a claim for relief under *Bivens*, a plaintiff must allege facts that plausibly show that: (1) the challenged action was attributable to an officer acting under color of federal law, and (2) such conduct deprived her of a right, privilege, or immunity secured by the Constitution. *See Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) (citing *Bivens*, 403 U.S. at 389).

*Bivens* provides only for money damages and not for injunctive or declaratory relief. *See Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities.").

As a result, to the extent Plaintiff seeks damages against Defendants in their official capacities, sovereign immunity bars any damages claims against "federal officers" sued in their "official capacity[.]" *MC Mgmt. of Rochester LLC v. Biden*, No. 23-1086, 2024 WL 2350505, at

---

[2] Ms. Cicchiello also claims violation of her Fourteenth Amendment rights. Am. Compl. at 1. Any claims of due process violation fall under the Due Process Clause of the Fifth Amendment, which applies to actions by the United States government and employees. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (holding Fifth Amendment's due process clause protects citizens against the conduct of federal government officials). Thus, any and all Fourteenth Amendment claims will be dismissed as not plausible.

*1 (2d Cir. May 23, 2024) (citing *Tanvir v. Tanzin*, 894 F.3d 449, 461 (2d Cir. 2018), *aff'd*, 592 U.S. 43 (2020)).

Accordingly, Ms. Cicchiello's claims against Defendants in their official capacities are dismissed.

Moreover, not all constitutional violations give rise to a damages remedy under *Bivens*. The Supreme Court has recognized a remedy for damages in three contexts: (1) Fourth Amendment search and seizure suit against federal narcotics officers (*Bivens*); (2) a Fifth Amendment due process suit against a congressman-employer on the grounds of gender discrimination (*Davis v. Passman*, 442 U.S. 228 (1979)); and (3) an Eighth Amendment cruel and unusual punishment suit against federal jailers for failure to provide adequate medical treatment (*Carlson v. Green*, 446 U.S. 14 (1980)). *See Ziglar*, 582 U.S. at 131. After those decisions, however, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernández v. Mesa*, 589 U.S. 93, 102 (2020); *see Egbert v. Boule*, 596 U.S. 482, 502 (2022) ("[I]f we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution.").

To determine whether a plaintiff's claim may proceed under *Bivens*, this Court must conduct a two-step analysis:

> First, we ask whether the case presents a new *Bivens* context—*i.e.*, is it meaningfully different from the three cases in which the Court has implied a damages action. Second, if the claim arises in a new context, a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed. If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy.

*Egbert*, 596 U.S. at 492 (internal quotations omitted).

With respect to the first step, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernández*, 589 U.S. at 103. "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Ziglar*, 582 U.S. at 139–40.

Second, if the case presents a new context, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136). Further, if "Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Ziglar*, 582 U.S. at 137 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)) (alteration in original).

In *Egbert*, the Supreme Court observed that the two-part test "often resolve[s] to a single question" of "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *See Egbert*, 596 U.S. at 1803 ("[T]he court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies "should be augmented by the creation of a new judicial remedy.'"). The Supreme Court instructed that "a plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances' with *Bivens,*

*Passman*, or *Carlson* unless [the plaintiff] also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law." *Id.* at 501. And "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id*. at 492 (quoting *Hernández*, 598 U.S. at 102).

### 2. The Fourth Amendment Claims

Ms Cicchiello's allegations raise Fourth Amendment concerns arising from her strip search. In the prison context, the Fourth Amendment proscribes unreasonable strip searches. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Harris v. Miller*, 818 F.3d 49, 58 n. 2 (2d Cir. 2016). It is well established that "inmates retain a limited right to bodily privacy under the Fourth Amendment." *Id.* at 57. "Courts assessing an inmate's claim that officers infringed his or her right to bodily privacy must undertake a two-part inquiry: (1) First, the court must determine whether the inmate has 'exhibit[ed] an actual, subjective expectation of bodily privacy'; and (2) second, the court must determine 'whether the prison officials had sufficient justification to intrude on [the inmate's] fourth amendment rights.'" *Id.* (quoting *Covino v. Patrissi*, 967 F.2d 73, 77–78 (2d Cir. 1992)).

But Ms. Cicchiello does not allege any facts about conduct by any named Defendant who carried out the strip search, except for Lieutenant Foisey. Ms. Cicchiello alleges that Lieutenant Foisey made inspection searches for contraband and "as a female," was involved with pat downs and strip searches for contraband. Compl. at 2. With respect to the strip search on July 2, 2024, Ms. Cicchiello alleges that Foisey "went beyond rules of a 'shakedown'" and needed to clear the search through Ms. Moore and Dr. Amundson. *Id.* at 2, 4. Ms. Cicchiello provides no facts to suggest, however, that either Ms. Moore or Dr. Amundson had any involvement at all with the strip search on July 2, 2024.

Although *Bivens* extended a damages remedy for Fourth Amendment search and seizure suit against federal narcotics officers, Ms. Cicchiello's Fourth Amendment claim—which appears to challenge Lieutenant Foisey's justification for ordering the strip search—presents a meaningfully different context for a *Bivens* remedy. Thus, the Court must determine "'whether there are any special factors that counsel hesitation about granting the extension.'" *Ballard v. Dutton*, No. 23-6416-PR, 2024 WL 4039606, at *2 (2d Cir. Sept. 4, 2024) (quoting *Hernández*, 589 U.S. at 102); *see Egbert*, 596 U.S. at 492.

Special factors clearly "counsel hesitation about" extending *Bivens* to such claim. *Hernández*, 589 U.S. at 102. First, the Supreme Court has long recognized that prison administration requires "expertise, planning and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Further, unlike the circumstances involved in *Bivens* or *Carlson*, "the Executive branch, through the Bureau of Prisons, provides Plaintiff with an administrative grievance process for inmates to lodge complaints about their confinement." *Ballard*, 2024 WL 4039606, at *2 (noting grievance procedure "did not exist at the time *Carlson* was decided"); *see* 28 C.F.R. § 542.10 ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."). The BOP Administrative Remedy Program provides an "'alternative remedial structure'" that prevents the district court "'from fashioning a *Bivens* cause of action.'" *Id.* (quoting *Egbert*, 596 U.S. at 493) ("If there are alternative remedial structures in place, that alone ... is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." (quotation marks omitted)).

8

Accordingly, the Court declines to recognize a remedy under *Bivens* for her Fourth Amendment claim against Lieutenant Foisey, and this claim will be dismissed as to all of the Defendants.

### 3.  The Fifth Amendment Claims

The Court construes Ms. Cicchiello's Complaint as asserting due process violations arising from failure to credit her for earned time credits and release her to Residential Reentry Center or to home confinement; sexual harassment; failure to protect; and her conditions of confinement.

      a.  <u>FSA Earned Time Credits and Release to Residential Reentry Center or Home Confinement</u>

Ms. Cicchiello's due process claims concerning FSA time credit deprivations or delay to her release to a Residential Reentry Center or home confinement implicate a new *Bivens* context. The Court cannot conclude that the *Bivens* remedy should be extended to Plaintiff's due process claims concerning any deprivation of her FSA earned time credits or her release to a Residential Reentry Center or home confinement because Congress has clearly established available remedy for such deprivations through a habeas action under 28 U.S.C. § 2241 for such claimed deprivations. *See Egbert*, 596 U.S. at 493.

Accordingly, these claims are dismissed.

      b.  <u>Sexual Harassment, Failure to Protect and Conditions of Confinement</u>

Ms. Cicchiello may be bringing substantive due process violations arising from a sexually harassing strip search, failure to protect her from such harassment, and her unbearably hot conditions of confinement. As relevant here, the Eighth Amendment provides an explicit textual source of constitutional protection for claims of sexual harassment, *see Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) ("A corrections officer's intentional contact with an

9

inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment."), and deliberate indifference to an inmate's conditions of confinement. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (holding deliberate indifference claims of sentenced inmates are cognizable under the Eighth Amendment, while deliberate indifference claims of unsentenced inmates are cognizable under the Fourteenth Amendment).

Accordingly, any claim for Fifth Amendment substantive due process violation will be dismissed because these alleged claims implicate Eighth Amendment interests instead.

### 4. The Eighth Amendment Claims

Ms. Cicchiello's Eighth Amendment claims arising from and allegedly overly hot conditions of confinement and sexual harassment or failure to protect her from such harassment by BOP staff present new contexts for a *Bivens* remedy. Again, the existing alternative remedies of the BOP Administrative Remedy Program for such claims precludes the Court from extending a *Bivens* remedy. *Ballard*, 2024 WL 4039606, at *2 (no *Bivens* remedy for Eighth Amendment failure-to-protect claim). In addition, Congress already affords Plaintiff a remedy under § 2241 to challenge her conditions of confinement.

Accordingly, these Eighth Amendment claims will be dismissed.

### 5. The First Amendment Retaliation Claims

It is clearly established that "there is no *Bivens* action for First Amendment retaliation." *See Egbert*, 596 U.S. at 499. Thus, Ms. Cicchiello cannot proceed on her claims for damages for First Amendment retaliation under *Bivens*. *See Selvam v. United States*, 2022 WL 6589550, at *2 (2d Cir. Oct. 11, 2022) (affirming dismissal of First Amendment retaliation claim as not cognizable).

Accordingly, the First Amendment retaliation claims will be dismissed.

### 6. The First Amendment Mail Interference and Court Access Deprivation Claims

As previously discussed, the existence of the BOP Administrative Remedy Program "counsel[s] hesitation about" extending *Bivens* to such claims. Indeed, several other out-of-Second Circuit courts have declined to extend *Bivens* remedy to either a mail interference or access to courts claim. *See Jordan v. Barves*, No. 24-2030, 2024 WL 4579248, at *2 (3d Cir. Oct. 25, 2024) (concluding First or Fifth Amendment violation of the right to access the courts "are not cognizable under *Bivens*"); *King v. Hill*, No. 21-CV-01719-JPG, 2022 WL 3348789, at *4 (S.D. Ill. Aug. 12, 2022) (collecting cases and finding *Bivens* does not extend to First Amendment claims involving access to mail). As a result, Ms. Cicchiello's claims of First Amendment interference with mail and court access deprivation claim, both of which present new *Bivens* contexts, are not cognizable.

Accordingly, these claims will be dismissed.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's Complaint is **DISMISSED with prejudice**. While, as described in the foregoing order, a *Bivens* action is an inappropriate remedy for her claims, this dismissal does not preclude Ms. Cicchiello from pursuing complaints and challenging conditions of her confinement through either the BOP's Administrative Remedy Program or a habeas action under 28 U.S.C. § 2241. The Clerk of the Court is respectfully directed to close this case.

_____

**SO ORDERED** at New Haven, Connecticut, this 7th day of February 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE